# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| **Brian Phillips,** | * |
| Plaintiff, | * |
| | Case No. 3:21-cv-15 |
| v. | * |
| | Judge |
| **The Yost Superior Co.** | * |
| 300 S. Center Street | Magistrate Judge |
| Springfield, OH 45506 | * |
| | **JURY DEMAND ENDORSED HEREON** |
| -and- | * |
| **David Deerwester, individually** | * |
| 300 S. Center Street | |
| Springfield, OH 45506 | * |
| -and- | * |
| **Sharon Deerwester, individually** | * |
| 300 S. Center Street | |
| Springfield, OH 45506 | * |
| Defendants. | * |

## COMPLAINT

Now comes Plaintiff Brian Phillips ("Plaintiff") for his complaint against The Yost Superior Co. ("Defendant Yost" or "Yost"), David Deerwestser ("Defendant DD"), and Sharon Deerwester ("Defendant SD") (collectively, the "Defendants") and hereby states as follows:

**I.      JURISDICTION AND VENUE**

1.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and disability discrimination in violation of Ohio Revised Code Chapter 4112 ("Chapter 4112").[1] Plaintiff brings this action to

---

[1] Defendants' conduct also violated 42 U.S.C. § 12112, *et seq.*, of Title I of the Americans with Disabilities Act of 1990 ("ADA"), as amended ("ADAAA"). Plaintiff currently has a pending charge of discrimination with the Equal

obtain relief provided in the FMLA and Chapter 4112 as a result of Defendants' discriminatory and retaliatory conduct towards him resulting in loss of wages, compensation, and benefits.

2. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises additional claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction because Plaintiff's state law claims are so related to the federal claims that they share a common core of operative facts.

3. Venue is proper in this forum pursuant to 28 U.S.C. §1391, because the Plaintiff entered into an employment relationship with Defendants in the Southern District of Ohio, a substantial part of the events or omission giving rise to the claim occurred in the Southern District of Ohio, and Defendants have their principal place of business as well as conducted substantial business in the Southern District of Ohio.

## II. PARTIES

4. At all times relevant herein, Plaintiff Brian Phillips was a resident of Springfield in Champaign County, Ohio. Plaintiff brings this action to redress injuries committed against him as a result of Defendants' actions.

5. At all times relevant herein, Plaintiff was an eligible employee as defined in the FMLA.

6. In addition, Plaintiff was an employee within the meaning of Ohio Revised Code § 4112.01(A)(3).

7. Defendant Yost is a domestic for-profit corporation established and organized under the laws of Ohio and it conducts substantial business in the Southern District of Ohio.

8. Defendant Yost manufactures and sells of variety of industrial springs.

---

Employment Opportunity Commission ("EEOC") and will amend this Complaint to add a claim(s) for violation of the ADA at the appropriate time.

9. Upon information and belief, Defendant David Deerwestser ("Defendant DD") is an individual, a United States Citizen, and a resident of the State of Ohio. Upon information and belief, Defendant DD is the Chief Executive Officer ("CEO") and co-owner of Defendant Yost.

10. Upon information and belief, Defendant Sharon Deerwester ("Defendant SD") is an individual, a United States Citizen, and a resident of the State of Ohio. Upon information and belief, Defendant SD is responsible for Defendant Yost's accounts payable and is also a co-owner of Defendant Yost.

11. At all times material herein, Defendants are and have been, jointly and individually, "employers" as defined by the FMLA, 29 U.S.C. § 2611, *et seq.*, and Ohio Revised Code § 4112.01(A)(2).

### III. STATEMENT OF FACTS

12. Plaintiff and his family have had a long-standing, successful employment relationship with Defendant Yost. The Phillips family has a combined one-hundred forty (140) years of service to Yost.

13. In addition to the nine (9) members of the Plaintiff's family who have served as employees throughout the years for Defendant Yost, Plaintiff himself was nearing his twenty-third (23rd) anniversary when Yost terminated his employment two (2) weeks after his release from in-patient treatment for alcoholism and protected FMLA leave.

14. Plaintiff began his employment with Defendants as a salesman in 1997. After several promotions over the years, Mr. Phillips was eventually employed as a Sales Manager for Yost beginning in or around 2005.

15. Throughout his employment with Defendants, Plaintiff's performance and record were outstanding and resulted in significant growth and profits for Yost over the years.

16. Plaintiff did not need treatment for his alcoholism disability until sometime in 2020 when Plaintiff's alcoholism advanced to a point that he recognized the need for some professional help.

17. Plaintiff checked himself into an alcohol treatment facility on March 9, 2020.

18. After a few days at the treatment facility, Plaintiff was transferred to the hospital for medical treatment for pancreatitis.

19. He was then released to return to work without restrictions on March 15, 2020.

20. Following his return, Plaintiff's performance was again strong in the months that followed, and he received an $8,000 performance-based bonus on September 1, 2020.

### *Plaintiff's FMLA Leave for In-Patient Treatment*

21. On September 25, 2020, Plaintiff sought additional medical treatment for his alcoholism from Ethan's Crossing Treatment Center in Springfield, Ohio.

22. Plaintiff applied and was approved for FMLA medical leave for his treatment at Ethan's Crossing and the outpatient therapy that followed.

23. Plaintiff successfully completed all requirements for his treatment and aftercare and has remained sober since entering Ethan's Crossing in September.

24. Following his treatment, Plaintiff was released to return to work performing his same job duties by his medical providers without any restrictions.

25. On October 12, 2020, four (4) days after Plaintiff's in-patient treatment at Ethan's Crossing ended, Defendant DD and Yost Chief Financial Officer ("CFO") Gary Dickerhoff met with Plaintiff to discuss his future with Yost.

26. During this meeting, Defendant DD and CFO Dickerhoff presented Plaintiff with a "Last Chance Agreement" that purported to outline putative recent performance issues that preceded Plaintiff's treatment for his disability. *See* **Exhibit 1.**

27. CFO Dickerhoff claimed that the agreement was needed "to protect all the other Yost employees".

28. Plaintiff disputed the accuracy of several statements within the Last Chance Agreement and asked Defendant DD for corrections to be made to the agreement due to these inaccuracies.

29. Defendant DD refused to make any of Plaintiff's requested modifications to the agreement.

30. Defendant DD insisted and required Plaintiff to execute the agreement as written before Plaintiff would be permitted to return to Yost after his FMLA leave concluded.

31. Plaintiff was not permitted to return to his position at Yost unless and until he signed the Last Chance Agreement as presented.

32. The Last Chance Agreement contained numerous improper provisions that violate state and federal anti-discrimination laws.

33. The Last Chance Agreement contained provisions requiring Plaintiff's completion of rehabilitation programs, compliance with medical recommendations, and random alcohol or drug tests.

34. It further provided for immediate termination if Plaintiff were to fail an alcohol test or drug test or not complete his recommended course of treatment for his alcoholism disability.

35. Defendants included within the Last Chance Agreement a vague provision providing that Defendant Yost could terminate Mr. Phillips for any "misconduct" that could result in "discipline" for a period of one (1) year after his return.

36. Defendants intentionally failed to define what constitutes "misconduct" for purposes of this paragraph and fails to limit such "misconduct" that could purportedly justify termination in any meaningful way.

37. Defendants intentionally failed to define what would constitute "misconduct," so they could terminate Plaintiff due to his disability and his FMLA leave without legal basis or a legitimate reason in violation of state and federal anti-discrimination and anti-retaliation laws.

### *Defendants required Plaintiff to resign from his Board of Directors Position*

38. Defendants also required Plaintiff to resign from his position on Yost's Board of Directors as a pre-condition to being allowed to return to work after his FMLA leave.

39. The Last Chance Agreement provided that "Phillips shall tender his resignation, effective September 24, 2020, from his Director position on the Board to the Secretary of the Board no later than October 16, 2020."

40. Plaintiff's role on Defendant Yost's Board of Directors constituted a term and/or condition of employment that was entitled to protection under the FMLA.

### *Defendants required Plaintiff to consent to release all medical and psychological records*

41. Defendants additionally improperly required Plaintiff to consent to the release of every medical and psychological record, past and future, as a condition of returning to work after his FMLA leave as part of the required Last Chance Agreement.

42. A provision within the Last Chance Agreement provides that "Phillips further agrees to sign the appropriate Medical Release Authorization form to allow Yost to receive information from all medical professionals and programs."

43. Defendants later presented Plaintiff with the Medical Release Authorization form which included the following language in describing the scope of Plaintiff's medical and psychological records release authorization as required by Defendants: "This authorization pertains to any and all treatment at any time in the past". *See* **Exhibit 2**.

44. Defendants required Plaintiff to sign the Medical Release Authorization before he would be permitted to return to work following his FMLA leave.

45. Plaintiff signed this Medical Release Authorization form as required by Defendants.

46. Because Plaintiff could not return to work unless and until he also signed the Last Chance Agreement, Plaintiff signed the agreement on October 14, 2020.

47. Plaintiff returned to work on October 19, 2020.

### *Defendants terminated Plaintiff two (2) weeks after his return from FMLA Leave*

48. Immediately upon Plaintiff's return after his FMLA leave for treatment, Defendants began treating Plaintiff less favorably than other non-disabled employees and began discriminating and retaliating against Plaintiff due to his disability and recent FMLA leave.

49. On October 21, 2020, two (2) days after Plaintiff returned to work after his FMLA leave, Defendants DD and SD called Plaintiff into a meeting.

50. In the meeting, Defendants DD and SD raised putative allegations about Plaintiff but provided no details or explanations to Plaintiff about the nature of such claimed allegations.

51. When Plaintiff asked for details about such vague allegations, Defendants DD and SD failed to provide any further details or explanations.

52. During this meeting, Defendant SD instructed Plaintiff not to talk to other Yost employees in his office.

53. Defendants never claimed during this meeting, or at any time thereafter, that Plaintiff drank alcohol after his treatment at Ethan's Crossing or after signing the Last Chance Agreement.

54. Defendants never claimed during the October 21, 2020 meeting or any time thereafter that Plaintiff failed to comply with any provision within the Last Chance Agreement pertaining to alcohol/drug use or completion of all related treatment/therapies.

55. Plaintiff remained sober and refrained from consumption of any alcohol or non-prescribed drugs at all times after his signing the Last Chance Agreement and his return to work following his FMLA leave for in-patient treatment at Ethan's Crossing.

56. On November 2, 2020, exactly two (2) weeks after Plaintiff returned to work after his FMLA leave, Defendants terminated Plaintiff's employment without good or legal cause or a legitimate non-discriminatory basis.

57. At the time of Plaintiff's termination, Defendants failed to give Plaintiff any reason for his firing.

58. Rather, Defendant DD stated during the November 2, 2020 termination meeting that he did not "trust" Plaintiff.

59. Over the course of Plaintiff's approximately twenty-three (23) years of employment with Defendants prior to his disclosure of his disability in 2020 and his FMLA leave of absence due to such disability in September of 2020, Defendants had never previously disciplined, reprimanded, or threatened to terminate Plaintiff's employment and his performance was strong.

60. Any purported reason given by Defendants for terminating Plaintiff's employment two (2) weeks after his return to work after FMLA leave is mere pretext.

61. Plaintiff (i) suffers from physical impairments that constitute a disability that substantially limits his major life activities, and/or (ii) had a record of a disability, and/or (iii) was regarded as disabled by Defendants.

62. Plaintiff did not anticipate any difficulties resuming his job duties following FMLA leave and after he disclosed his disability to Defendants because he has at all relevant times been able to perform the essential functions of his job. This is particularly so because he was released to return to work performing his job duties by his medical providers without any restrictions.

63. Plaintiff subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 11, 2021 which remains pending.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### 29 U.S.C. § 2615, *et seq.* - FMLA - Interference with FMLA Rights

64. All of the preceding paragraphs are realleged as if fully rewritten herein.

65. At all times relevant, Plaintiff was an "eligible employee" as defined by 29 U.S.C. § 2611(2).

66. At all times relevant, Defendants were individually and jointly an "employer" as defined by 29 U.S.C. § 2611(4)(A).

67. Plaintiff's request for, and use of, FMLA leave beginning on September 25, 2020 through October 8, 2020 was for his "serious health condition" as defined by 29 U.S.C. § 2611(11)(B).

68. When Plaintiff's FMLA leave concluded, Defendants impeded Plaintiff's exercise of his rights under the FMLA.

69. Defendants violated 29 U.S.C. § 2614(a)(1) by failing to either (1) restore Plaintiff to the position he held prior to when his FMLA leave commenced; or (2) restore Plaintiff to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment.

70. Defendants violated 29 U.S.C. § 2615(a)(1) by interfering with, restraining, and/or denying the exercise of or the attempt to exercise any right provided to Plaintiff under the FMLA.

71. Defendants violated 29 U.S.C. § 2614(a)(1) and 29 U.S.C. § 2615(a)(1) by (i) conditioning Plaintiff's return to work and continued employment after FMLA leave on signing a "Last Chance Agreement"; (ii) requiring Plaintiff to execute the agreement as written before Plaintiff would be permitted to return to Yost after his FMLA leave concluded and refusing Plaintiff's proposed

corrections of inaccuracies; (iii) requiring Plaintiff to resign from his position on Yost's Board of Directors as a pre-condition to being allowed to return to work at all after his FMLA leave; (iv) requiring Plaintiff to consent to the release of every medical record, past and future, as a condition of returning to work after his FMLA leave as part of the required Last Chance Agreement; (v) instructing Plaintiff not to talk to other Yost employees in his office upon his return; and (vi) terminating Plaintiff's employment on November 2, 2020 without good or legal cause or a legitimate non-discriminatory basis only two (2) weeks after Plaintiff returned to work after his FMLA leave.

72. The foregoing actions individually and collectively violated Defendants' obligations under 29 U.S.C. § 2614(a)(1) to (1) restore Plaintiff to the position he held prior to when his FMLA leave commenced; or (2) restore Plaintiff to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment.

73. Defendants have willfully and/or recklessly interfered with, restrained, and/or denied Plaintiff's rights in violation of the FMLA, by taking the foregoing non-exhaustive list of actions.

74. Defendants lacked good faith to believe they had not violated the FMLA in their actions.

75. As a direct and proximate result of Defendants' actions, Plaintiff has suffered substantial damages, including but not limited to lost wages and benefits as well as time and money in endeavoring to protect himself from Defendants, including costs and attorneys' fees in accordance with 29 U.S.C. § 2617(a).

**SECOND CAUSE OF ACTION**
**29 U.S.C. § 2615, *et seq.* - FMLA - Retaliation**

76. All of the preceding paragraphs are realleged as if fully rewritten herein.

77. At all times relevant, Plaintiff was an "eligible employee" as defined by 29 U.S.C. § 2611(2).

78. At all times relevant, Defendants were individually and jointly an "employer" as defined by 29 U.S.C. § 2611(4)(A).

79. Plaintiff's request for, and use of, FMLA leave beginning on September 25, 2020 through October 8, 2020 was for his "serious health condition" as defined by 29 U.S.C. § 2611(11)(B).

80. Pursuant to 29 U.S.C. § 2615(a)(2), an employer is prohibited from discriminating or retaliating against an employee who exercises a right under the FMLA. *See* 29 U.S.C. § 2615(a)(2).

81. When Plaintiff took FMLA leave and when his leave concluded, Defendants willfully and/or recklessly retaliated against, discriminated against, interfered with, restrained, and/or denied Plaintiff's rights in violation of the FMLA.

82. Defendants violated 29 U.S.C. § 2615(a)(2), discriminated, and retaliated against Plaintiff by (i) conditioning Plaintiff's return to work and continued employment after FMLA leave on signing a "Last Chance Agreement"; (ii) requiring Plaintiff to execute the agreement as written before Plaintiff would be permitted to return to Yost after his FMLA leave concluded and refusing Plaintiff's proposed corrections of inaccuracies; (iii) requiring Plaintiff to resign from his position on Yost's Board of Directors as a pre-condition to being allowed to return to work at all after his FMLA leave; (iv) requiring Plaintiff to consent to the release of every medical record, past and future, as a condition of returning to work after his FMLA leave as part of the required Last Chance Agreement; (v) instructing Plaintiff not to talk to other Yost employees in his office upon his return; and (vi) terminating Plaintiff's employment on November 2, 2020 without good or

legal cause or a legitimate non-discriminatory basis only two (2) weeks after Plaintiff returned to work after his FMLA leave.

83. The foregoing actions individually and collectively violated Defendants' obligations under 29 U.S.C. § 2614(a)(1) to (1) restore Plaintiff to the position he held prior to when his FMLA leave commenced; or (2) restore Plaintiff to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment.

84. Pursuant to 29 U.S.C § 2615(a)(2), an employer is prohibited from discriminating or retaliating against an employee who exercises a right under the FMLA.

85. Defendants have willfully and/or recklessly discriminated and retaliated against Plaintiff for exercising his FMLA rights in violation of the FMLA, by taking the foregoing non-exhaustive list of actions.

86. Defendants lacked good faith to believe they had not violated the FMLA in its actions.

87. As a direct and proximate result of Defendants' actions, Plaintiff has suffered substantial damages, including but not limited to lost wages and benefits as well as time and money in endeavoring to protect himself from Defendants, including costs and attorneys' fees in accordance with 29 U.S.C. § 2617(a).

### THIRD CAUSE OF ACTION
### Ohio Revised Code § 4112.02 – Disability Discrimination

88. All of the preceding paragraphs are realleged as if fully rewritten herein.

89. At all times relevant herein, Plaintiff was disabled, regarded as disabled, or he had a record of a disability, as defined in O.R.C. § 4112.01(A)(13), because he suffered from a physical impairment that substantially limits his ability to perform several major life activities and/or impacts major life functions.

Complaint – *Phillips v. The Yost Superior Co., et al.*
Case No. 3:21-cv-15
Page 12 of 16

90. Despite his physical impairment(s) and/or disability, Plaintiff was able to perform the essentials functions of his job with or without a reasonable accommodation. Accordingly, Plaintiff was an "otherwise qualified" individual.

91. Defendants knew Plaintiff was disabled, and/or had a record of impairment, and/or regarded him as disabled.

92. Defendants discriminated against Plaintiff because of his disability or record of impairment by taking the following non-exhaustive list of actions: (i) conditioning Plaintiff's return to work and continued employment after FMLA leave on signing a "Last Chance Agreement"; (ii) requiring Plaintiff to execute the agreement as written before Plaintiff would be permitted to return to Yost after his FMLA leave concluded and refusing Plaintiff's proposed corrections of inaccuracies; (iii) requiring Plaintiff to resign from his position on Yost's Board of Directors as a pre-condition to being allowed to return to work at all after his FMLA leave; (iv) requiring Plaintiff to consent to the release of every medical record, past and future, as a condition of returning to work after his FMLA leave as part of the required Last Chance Agreement; (v) instructing Plaintiff not to talk to other Yost employees in his office upon his return; and (vi) terminating Plaintiff's employment on November 2, 2020 without good or legal cause or a legitimate non-discriminatory basis only two (2) weeks after Plaintiff returned to work after his FMLA leave, and/or (vii) by otherwise discriminating against him in the terms, privileges and conditions of employment while other similarly-situated employees without disabilities received more favorable treatment.

93. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to emotional

distress and the loss of compensation, benefits and other terms, privileges and conditions of employment for which Defendants are liable.

94. Defendants' conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages, punitive damages, reasonable attorneys' fees, costs, and other relief available under Ohio Revised Code Chapter 4112.

### FOURTH CAUSE OF ACTION
### Ohio Revised Code § 4112.02(I) - Retaliation

95. All of the preceding paragraphs are realleged as if fully rewritten herein.

96. This claim is brought under Ohio law, pursuant to Ohio Revised Code § 4112.02(I), *et seq*.

97. Plaintiff engaged in a protected activity by requesting reasonable accommodation for his disability in seeking FMLA leave to attend in-patient rehabilitation treatment.

98. Plaintiff had never been subjected to any form of discipline by Defendants prior to his FMLA leave due to his disability in over twenty-three (23) years of working for the Defendants.

99. Defendants knew that Plaintiff engaged in a protected activity in seeking in-patient treatment for his disability.

100. Once Plaintiff engaged in the aforementioned protected activity and then sought to return to his position, Defendants purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions: (i) conditioning Plaintiff's return to work and continued employment after FMLA leave on signing a "Last Chance Agreement"; (ii) requiring Plaintiff to execute the agreement as written before Plaintiff would be permitted to return to Yost after his FMLA leave concluded and refusing Plaintiff's proposed corrections of inaccuracies; (iii) requiring Plaintiff to resign from his position on Yost's Board of Directors as a pre-condition to being allowed to return to work at all after his FMLA leave; (iv) requiring Plaintiff to consent to the release of every

medical record, past and future, as a condition of returning to work after his FMLA leave as part of the required Last Chance Agreement; (v) instructing Plaintiff not to talk to other Yost employees in his office upon his return; and (vi) terminating Plaintiff's employment on November 2, 2020 without good or legal cause or a legitimate non-discriminatory basis only two (2) weeks after Plaintiff returned to work after his FMLA leave, and/or (vii) by otherwise discriminating against him in the terms, privileges and conditions of employment while other similarly-situated employees without disabilities received more favorable treatment.

101. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer substantial economic and non-economic damages, including but not limited to emotional distress and the loss of compensation, benefits and other terms, privileges and conditions of employment for which Defendants are liable.

102. Defendants' conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages, punitive damages, reasonable attorneys' fees, costs, and other relief available under Ohio Revised Code Chapter 4112.

## V. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands lost wages and benefits, front pay and benefits, and additional damages to be determined at trial, including but not limited to statutory damages, compensatory damages, liquidated damages, punitive damages, pre-judgment interest, post-judgment interest, costs, attorneys' fees, and all other relief the Court deems just and appropriate.

Respectfully Submitted,

| | |
|---|---|
| */s/ Matthew J.P. Coffman* | */s/ Peter A. Contreras* |
| Matthew J.P. Coffman (0085586) | Peter Contreras (0087530) |
| Kelsie N. Hendren (100041) | **Contreras Law, LLC** |
| **COFFMAN LEGAL, LLC** | 1550 Old Henderson Road |
| 1550 Old Henderson Road | Suite 126 |
| Suite 126 | Columbus, Ohio 43220 |
| Columbus, Ohio 43220 | Phone: 614-787-4878 |
| Phone: 614-949-1181 | Fax: 614-957-7515 |
| Fax: 614-386-9964 | Email: peter.contreras@contrerasfirm.com |
| Email: mcoffman@mcoffmanlegal.com | |
|     khendren@mcoffmanlegal.com | |

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff requests a trial by a jury of eight (8) persons.

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman